## The People of the State of Illinois, ex rel. Charles W. Thomas, v. The East St. Louis & Suburban Railway Company.

1. MANDAMUS—*when does not lie, to compel railroad to run its trains to a particular point.* Mandamus does not lie to compel a railroad company to run its trains to a particular point where it does not appear that such carrier was under any legal obligation so to do.

*Mandamus* proceeding. Error to the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1905. Affirmed. Opinion filed September 8, 1905.

CHARLES W. THOMAS, for plaintiff in error.

SCHAFER & FARMER, for defendant in error.

MR. JUSTICE MYERS delivered the opinion of the court.

In this proceeding the relator, plaintiff in error, a citizen and resident of Belleville, seeks by *mandamus* to compel the defendant in error to run and operate its passenger cars to and from the east entrance of the Eads Bridge in East St. Louis, a point about four blocks east and beyond its present terminal or transfer station. The petition was filed in the Circuit Court of St. Clair County and the issues made by answer and replication were tried by the court without a jury. The court's finding was in favor of the defendant, and against the petitioner for costs. Whereupon the record is brought by writ of error to this court for review.

From the petition, answer and evidence it appears that the Belleville Electric Railway Company was organized under the General Railway Act of this State, December 8, 1893, with power to build and operate a railroad from the eastern limits of Belleville to the western limits of East

St. Louis; that it built an electric railroad in 1894 on Main street, in Belleville, from the public square to the western city limits, which has since been used by it and its legal successors to convey passengers from the public square to East St. Louis; that in 1902 its name was changed to the East St. Louis & Suburban Railway Company; that in February, 1897, the St. Louis, Belleville & Suburban Railway Company was organized under the General Law and built and operated a double track electric railway from the western limits of Belleville to the eastern limits of East St. Louis; that in March, 1902, the St. Louis, Belleville & Suburban Railway Company sold its property and franchise to and became consolidated with the East St. Louis & Suburban Railway Company, the defendant in this case; that in July, 1893, the city of East St. Louis gave permission to the said St. Louis, Belleville & Suburban Railway Company to run its cars over the tracks of the East St. Louis Electric Street Railway Company to and from the east entrance of the Eads Bridge in said city, subject, however, to such traffic arrangement or agreement as might be made with the said East St. Louis Electric Street Railway Company for such privilege, and subject, also, to the ordinances and regulations enacted and imposed by the city of East St. Louis. It, furthermore, appears that under a contract arrangement with the said East St. Louis Electric Railway Company, the defendant operated its cars to the Eads Bridge, until about a year prior to filing the petition herein when, in conformity with the request and direction of the municipal authorities of East St. Louis, the terminal or transfer station of the defendant road was changed to its present location, four blocks east of the east entrance to the Eads Bridge.

It does not appear of record that the defendant was under any legal duty to operate its cars to the end of the bridge, and this alone and of itself is sufficient to warrant the judgment of the Circuit Court. The contention by plaintiff that this duty was imposed by the Belleville city ordinance which gave to the St. Louis, Belleville & Subur.

ban Railway Company permission to construct and operate its railway in the city of Belleville, is fully met by the fact that afterwards and before the road was built under the permission, the ordinance was repealed. By contract arrangement with the East St. Louis Electric Street Railroad Company, to which the city of East St. Louis assented, defendant was permitted to operate its cars over the tracks of said company to Eads Bridge. But nothing in the ordinance by which assent of the city is given to this contract, imposes upon the defendant the duty to run its cars to the Bridge. Nor does the ordinance contain any restriction upon the contracting companies as to the location of the transfer station or terminal point of the defendant company. By express provision of the ordinance the rights of the defendant in the use of the tracks through the city are subject to the contract made with the East St. Louis Electric Street Railroad Company, and the ordinances and regulations of the city. From aught that appears in this record, the city had the power and legal authority to direct the change of which complaint is made, and certainly without in any manner trenching upon the vested rights of either the plaintiff or defendant in this cause. Whether the change of the transfer station from the end of the bridge to its present location was for the health, convenience or safety of the public or passengers is a question outside the issues in this case and with which we have no concern. Nor does it matter that what was done may not have been enjoined by formal act and ordinance of the city council. That the change was requested by the mayor, that other city officers approved of it, and that all parties, whose legal rights may have been affected seem to have acquiesced, warrants the inference that it was done by municipal authority for the public good. Failing to establish the legal duty of the defendant to operate its cars to the Eads Bridge, the petitioner is without right in this proceeding. Other questions have been presented and discussed in argument and numerous authorities cited in support of well-established propositions of law applicable in proceedings of this kind, but in view

of our holding upon plaintiff's first contention, we do not deem it necessary or profitable to extend this opinion. The judgment of the Circuit Court will be affirmed.

*Affirmed.*